Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/28/2020 09:09 AM CDT

- 1 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

E.M., appellant, v. Nebraska Department of
Health and Human Services
et al., appellees.

Kevin Vasquez Perez, appellant, v. Nebraska
Department of Health and Human
Services et al., appellees.

Walter Hernandez Marroquin, appellant, v.
Nebraska Department of Health and
Human Services et al., appellees.

___ N.W.2d ___

Filed June 5, 2020.    Nos. S-18-1146 through S-18-1148.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. **____: ____: ____.** When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Judgments.** Whether an agency decision conforms to the law is by definition a question of law.

4. **Administrative Law: Statutes: Appeal and Error.** The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

5. **Administrative Law: Appeal and Error.** An issue that has not been presented in the petition for judicial review has not been properly preserved for consideration by the district court.

6. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not passed upon by the trial court.

- 2 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

7. **Statutes: Legislature: Presumptions: Judicial Construction.** In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.

8. **Statutes.** Statutory language is to be given its plain and ordinary meaning.

9. **Public Assistance: Words and Phrases.** For the purposes of state or local public benefits eligibility under Neb. Rev. Stat. § 4-108 (Reissue 2012), "lawfully present" means the alien classifications under 8 U.S.C. § 1621(a)(1), (2), and (3) (2012).

10. **Public Assistance: Legislature.** In order to affirmatively provide a state public benefit to aliens not lawfully present in the United States, as authorized by 8 U.S.C. § 1621(d) (2012), the Legislature must make a positive or express statement extending eligibility by reference to immigration status.

11. **Constitutional Law: Federal Acts: States.** Under the Supremacy Clause of the U.S. Constitution, state law that conflicts with federal law is invalid.

12. **Statutes: Words and Phrases.** It is not for the courts to supply missing words or sentences to a statute to supply that which is not there.

13. **Statutes: Appeal and Error.** The rules of statutory interpretation require an appellate court to give effect to the entire language of a statute, and to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible.

14. ____: ____. An appellate court gives effect to all parts of a statute and avoids rejecting as superfluous or meaningless any word, clause, or sentence.

15. **Administrative Law: Statutes.** For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.

16. ____: ____. Properly adopted and filed regulations have the effect of statutory law.

17. **Constitutional Law.** Nebraska's separation of powers clause prohibits the three governmental branches from exercising the duties and prerogatives of another branch.

18. ___. The separation of powers clause prevents a branch from delegating its own duties or prerogatives except as the constitution directs or permits.

Appeals from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Allison Derr, Robert McEwen, and Sarah Helvey, of Nebraska Appleseed Center for Law in the Public Interest, and Mindy Rush-Chipman for appellants.

Douglas J. Peterson, Attorney General, and Ryan C. Gilbride for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## I. INTRODUCTION

A federal statute[1] and its Nebraska counterpart[2] make noncitizens, who are not "lawfully present,"[3] ineligible for state public benefits unless the State "affirmatively provides"[4] for eligibility. In these consolidated Administrative Procedure Act[5] appeals, we determine whether the language of the Young Adult Bridge to Independence Act (YABI)[6] sufficiently made several noncitizen applicants eligible for all public benefits of the Bridge to Independence program (B2I). A state agency ruled them ineligible, and on appeal, the district court affirmed. On appeal to this court, we affirm. We also reject their constitutional challenge to an agency regulation.[7]

## II. BACKGROUND

Before we summarize the proceedings, a brief introduction to YABI and B2I will be helpful.

---

[1] See 8 U.S.C. § 1621 (2012).

[2] See Neb. Rev. Stat. §§ 4-108 to 4-113 (Reissue 2012 & Cum. Supp. 2018).

[3] See §§ 1621(d) and 4-108.

[4] § 1621(d). See § 4-108.

[5] See Neb. Rev. Stat. §§ 84-901 to 84-920 and 84-933 to 84-948 (Reissue 2014 & Cum. Supp. 2018).

[6] See Neb. Rev. Stat. §§ 43-4501 to 43-4514 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019).

[7] See 395 Neb. Admin. Code, ch. 10, § 003.02 (2014).

- 4 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

### 1. YABI and B2I

YABI was enacted in 2013[8] in response to the federal Fostering Connections to Success and Increasing Adoptions Act of 2008.[9] The purpose of YABI is to "support former state wards in transitioning to adulthood, becoming self-sufficient, and creating permanent relationships."[10] YABI, in turn, created B2I, Nebraska's extended foster care program.[11] The program is available to a young adult who is at least 19 years old, who was adjudicated to be a juvenile under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), who satisfies the education/work requirement, who is a Nebraska resident, and who does not meet the level of care for a nursing facility.[12] B2I offers support services such as medical care, foster care maintenance payments, and case management services until the former ward turns 21 years old.[13] We now turn to the procedural history in these consolidated appeals.

### 2. Agency Proceedings

E.M., Kevin Vasquez Perez, and Walter Hernandez Marroquin (applicants) are Guatemalan citizens, who fled to Nebraska as minors. Each was adjudicated by the juvenile court, pursuant to § 43-247(3)(a), and each was placed in foster care.

Before each applicant turned 19 years of age, he applied to the Nebraska Department of Health and Human Services (DHHS) for B2I. At the time of each application, the applicant had already received special immigrant juvenile (SIJ) status from the U.S. Citizenship and Immigration Services. DHHS denied each of the applications, because each applicant failed to meet the "citizenship/lawful presence requirements."

---

[8] 2013 Neb. Laws, L.B. 216 (formerly known as Young Adult Voluntary Services and Support Act).

[9] Pub. L. No. 110-351, § 1, 122 Stat. 3949.

[10] See § 43-4502.

[11] See § 43-4501 et seq.

[12] See § 43-4504.

[13] See § 43-4505.

Applicants requested fair hearings with DHHS. At the hearing, the parties presented evidence and made arguments. In DHHS' order, it reasoned that because a person not "lawfully present" in the United States shall not be provided public benefits and applicants were neither U.S. citizens nor qualified aliens, they were not eligible for B2I.

### 3. District Court Appeal

Applicants filed timely petitions for review to the district court for Lancaster County. The parties stipulated to joinder of applicants' petitions for review. Applicants made two arguments. First, they asserted that the omission of a citizenship requirement and the inclusion of a case management service that offers immigration assistance showed a clear intent to extend public benefits to those not "lawfully present." Second, because DHHS promulgated a regulation that they claimed added an eligibility requirement not provided in YABI, they asserted that it violated the separation of powers clause of the Nebraska Constitution.[14]

The district court began its analysis by discussing the relevant federal statutes. The court observed that under § 1621, aliens are not eligible for state or local public benefits unless they qualify under an enumerated alien status.[15] But, the court recognized, under § 1621(d), the State can provide benefits to those not otherwise eligible through the enactment of a state law that "affirmatively provides for such eligibility."

The court reasoned that because there was no affirmative language in YABI to include those not "lawfully present" to receive public benefits, applicants were not eligible for B2I. It explained that applicants' argument-that the inclusion of an immigration assistance service in the program provided eligibility to those with SIJ status-"require[d] an inference not warranted by the statutory language or scheme." It stated that providing the immigration assistance service to those

---

[14] See Neb. Const. art. II, § 1.

[15] See 8 U.S.C. § 1641 (2012).

- 6 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

ineligible for the program does not automatically convert an individual into someone who is eligible. It remarked that the generic language of the statute did not rise to the level of affirmative language by the Legislature to provide eligibility for those individuals.

The court analyzed applicants' argument regarding the additional eligibility regulation. It stated:

> In other words, that regulation explains that if a person does not meet the citizenship/lawful presence requirement, the Department may nevertheless assist the young adult in obtaining the necessary state court findings for status adjustment application (after which that the young adult may achieve an appropriate status under § 1621(a) to receive public benefits).

It concluded that the regulation did not change the language or meaning of the program. It affirmed DHHS' denial of applicants' participation in B2I.

Each of the applicants filed a timely appeal, which, pursuant to the parties' stipulation, the Nebraska Court of Appeals consolidated for briefing and disposition. Later, we granted applicants' petition to bypass the Court of Appeals.[16]

## III. ASSIGNMENTS OF ERROR

Applicants assign, restated, that the district court erred in (1) determining that citizenship or immigration status is relevant to eligibility for B2I; (2) affirming DHHS' determination that because each applicant was not a citizen or qualified alien, he was not eligible; and (3) failing to strike down the eligibility regulation on the basis that it violated the separation of powers clause of the Nebraska Constitution.

## IV. STANDARD OF REVIEW

[1-3] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate

---

[16] See Neb. Ct. R. App. P. § 2-102(B) (rev. 2015).

- 7 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

court for errors appearing on the record.[17] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[18] Whether an agency decision conforms to the law is by definition a question of law.[19]

[4] The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[20]

## V. ANALYSIS

The federal Immigration and Nationality Act (INA)[21] defines many terms, including "alien"[22] and "national of the United States."[23] Federal statutes also use lengthy terms, such as "an alien who is not lawfully present,"[24] to describe the status of particular individuals. Following the lead of the California Supreme Court and purely for the sake of brevity, we refer to such individuals as "unlawful aliens."[25]

The overarching question that we must answer is whether applicants were eligible for B2I.

---

[17] *McManus Enters. v. Nebraska Liquor Control Comm.*, 303 Neb. 56, 926 N.W.2d 660 (2019).

[18] *Id.*

[19] *Id.*

[20] *In re Application No. OP-0003*, 303 Neb. 872, 923 N.W.2d 653 (2019).

[21] See 8 U.S.C. § 1101 et seq. (2012).

[22] See § 1101(a)(3) ("term 'alien' means any person not a citizen or national of the United States").

[23] See § 1101(a)(22) ("term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States").

[24] See 8 U.S.C. §§ 1621(d) and 1623 (2012).

[25] See *Martinez v. Regents of University of Cal.*, 50 Cal. 4th 1277, 241 P.3d 855, 117 Cal. Rptr. 3d 359 (2010).

- 8 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

### 1. Arguments Not Considered

On appeal to this court, applicants make several arguments—two of which DHHS challenges as being outside the scope of applicants' petitions for review filed in the district court. DHHS first challenges the argument that because § 1621 does not apply to unlawful aliens in foster care services under the juvenile court jurisdiction, it does not apply to unlawful aliens in extended foster care. DHHS also challenges the argument that B2I is an in-kind service, necessary for life and safety, which, applicants argue, is an exempt public benefit.

[5] As DHHS correctly notes, an Administrative Procedure Act statute dictates that a petition for review must set forth the "petitioner's reasons for believing that relief should be granted."[26] Thus, we have said that an issue that has not been presented in the petition for judicial review has not been properly preserved for consideration by the district court.[27]

We agree that neither argument was raised in the amended petitions for review filed in the district court. Each broadly stated that "[DHHS has] incorrectly and unlawfully determined that [applicants are] not eligible for extended foster care benefits . . . ." We agree with DHHS that this broad assertion did not properly preserve the challenged arguments for review.

[6] This, in turn, dictates that we should not consider either argument. An appellate court will not consider an issue on appeal that was not passed upon by the trial court.[28] Therefore, we will not address them.

### 2. Federal and State Statutory Limitations

Before we can determine if applicants are eligible for B2I, we must determine whether the federal and state statutory

---

[26] § 84-917(2)(b)(vi).

[27] *Skaggs v. Nebraska State Patrol*, 282 Neb. 154, 804 N.W.2d 611 (2011).

[28] *Thorson v. Nebraska Dept. of Health & Human Servs.*, 274 Neb. 322, 740 N.W.2d 27 (2007).

- 9 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

limitations on providing state public benefits to noncitizens apply to YABI. And before undertaking that analysis, we first recall the relevant federal and state statutes.

## (a) PRWORA

In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA).[29] PRWORA prohibited an alien who is not a "qualified alien (as defined in [8 U.S.C. § 1641])" from receiving any "Federal public benefit."[30] It did so "[n]otwithstanding any other provision of law"[31] but with certain exceptions.[32]

Pertinent to the appeal before us, PRWORA also declared certain individuals to be ineligible for any state or local public benefit.[33] It provided that an alien who is not (1) a qualified alien (as defined by § 1641), (2) a nonimmigrant under the INA, or (3) an alien paroled into the United States under the INA for less than 1 year, is not eligible for any state or local public benefit.[34] Like the prohibition on federal public benefits, the prohibition on state public benefits applies "[n]otwithstanding any other provision of law"[35] but with specified exceptions.[36]

Applicants concede that they are "not considered qualified aliens for the purposes of PRWORA."[37] They also concede that they are "not specifically listed under PRWORA as qualified to receive those benefits meeting the definition of state or local public benefits."[38]

---

[29] Pub. L. No. 104-193, § 1, 110 Stat. 2105.

[30] See 8 U.S.C. § 1611(a) (2012).

[31] *Id*.

[32] See § 1611(b).

[33] See § 1621(a).

[34] *Id*.

[35] *Id*.

[36] See § 1621(b) and (d).

[37] Brief for appellants at 16.

[38] *Id*. at 16-17.

- 10 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

At the heart of the case before us is PRWORA's provision creating an exception allowing states to extend state and local public benefits to unlawful aliens. We quote it in full, as follows:

> A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under subsection (a) of this section only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility.[39]

In this exception, the key terms are "alien who is not lawfully present in the United States" and "affirmatively provides."[40]

### (b) L.B. 403

In 2009, the Nebraska Legislature enacted the state law equivalent of PRWORA as part of L.B. 403.[41] It provided that "[n]otwithstanding any other provisions of law, . . . no state agency or political subdivision of the State of Nebraska shall provide public benefits to a person not lawfully present in the United States."[42] In order to verify lawful presence, an applicant for public benefits must attest that he or she is a U.S. citizen or that he or she is a qualified alien and lawfully present.[43]

### (c) Interpreting YABI

[7] We must interpret YABI consistently with PRWORA and its Nebraska counterpart. In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of

---

[39] § 1621(d).

[40] See *id*.

[41] 2009 Neb. Laws, L.B. 403, §§ 1 to 6 (codified at §§ 4-108 to 4-113).

[42] § 4-108(1).

[43] § 4-111(1).

- 11 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.[44] The Legislature enacted YABI in 2016, 7 years after it adopted L.B. 403 and 20 years after Congress enacted PRWORA. No subsequent legislation has been enacted to limit or broaden PRWORA or its Nebraska counterpart. Applicants concede, as they must, that YABI "should be read in conjunction with the PRWORA and L.B. 403."[45]

[8] We do so using our well-settled principle: Statutory language is to be given its plain and ordinary meaning.[46] Both §§ 1621 and 4-108 proclaim that they apply "[n]otwithstanding any other provision[] of law." When the Legislature enacted YABI, it did so with full knowledge that §§ 1621 and 4-108 limited public benefits to citizens and "lawfully present" aliens and required it to "affirmatively provide[]" for eligibility in order to extend public benefits to unlawful aliens. We will examine each of these requirements in more detail.

### (d) "Lawfully Present"

Because YABI is subject to §§ 1621 and 4-108, we must determine if applicants were "lawfully present." They were not.

The Nebraska act does not define "lawfully present." But one section requires an applicant to verify lawful presence by attesting that he or she is either (1) a U.S. citizen or (2) a qualified alien and is lawfully present.[47] This requirement makes it clear that "lawfully present" refers to an individual's citizenship or alien immigration status. Because the federal government has broad, undoubted power over immigration and the status of aliens,[48] we turn to PRWORA for guidance.

---

[44] *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019).

[45] Brief for appellants at 18.

[46] *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020).

[47] See § 4-111(1).

[48] See *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 183 L. Ed. 2d 351 (2012).

- 12 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

Although the term is not defined in PRWORA, it appears only in § 1621, which we have already analyzed, and in § 1623. Similar to § 1621, § 1623 states that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit . . . ."

In *Arizona ex rel. Brnovich v. Maricopa CCCDB*,[49] the Arizona Supreme Court interpreted § 1623's "lawfully present" requirement as the eligibility required for § 1621(a). It reasoned that from the context of § 1621(a) and § 1621(d) that "Congress directly equated aliens 'not lawfully present' with those otherwise 'ineligible under subsection (a).'"[50] It explained that Congress provided for only certain categories of aliens to be eligible for state and local public benefits. Therefore, aliens who do not fall within one of those categories are not "lawfully present" for the purpose of State or local public benefits.

[9] We agree with the reasoning of the Arizona Supreme Court. The context of § 1621 shows clear intent by Congress to equate those ineligible under § 1621(a) with aliens not "lawfully present." With certain exceptions not applicable here, only the three alien statuses enumerated in § 1621(a) may receive public benefits. For the purposes of state or local public benefits eligibility under § 4-108, "lawfully present" means the alien classifications under § 1621(a)(1), (2), and (3).

Applicants have not presented evidence that they qualify as "lawfully present" aliens under § 1621(a). Applicants are not qualified aliens under § 1641, nonimmigrants under the INA, or aliens who were paroled into the United States under the INA for less than 1 year. Thus, for purposes of § 4-108, applicants were "not lawfully present in the United States."

---

[49] See *Arizona ex rel. Brnovich v. Maricopa CCCDB*, 243 Ariz. 539, 416 P.3d 803 (2018).

[50] *Id*. at 541, 416 P.3d at 805.

- 13 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

### (e) "Affirmatively Provides"

Where an alien is not "lawfully present," state public benefits can be provided only through the enactment of a state law which "affirmatively provides" for eligibility.[51] Because we have not determined what those words require, we first examine decisions from other states and then settle the meaning of the phrase.

### (i) Decisions From Other States

In *Kaider v. Hamos*,[52] an Illinois court determined the plain meaning of the phrase by using a dictionary definition. There, both parties did likewise. One side contended that "affirmatively" required specific or express reference to unlawful aliens; the other urged that it only required an unambiguous and positive expression of legislative intent to opt out of § 1621(a). The Illinois court reasoned that the first argument went too far, in that Congress did not require express or specific reference to a specific term. The "better understanding," the court said, was that "Congress wanted to prevent the passive or inadvertent override of [§] 1621(a)."[53] The court determined that "[§] 1621(d) is satisfied by any state law that conveys a positive expression of legislative intent to opt out of [§] 1621(a) by extending state or local benefits to unlawful aliens."[54] Then, applying this understanding to the Illinois programs' statutory language, which provided services to "'noncitizens'" or "'noncitizens' who were not otherwise eligible," the court reasoned that the term "noncitizen" left unmodified was broad enough to encompass unlawful aliens.[55] It concluded that the programs positively conveyed an intent to opt out of § 1621(a) and extend certain benefits to unlawful aliens.

---

[51] § 1621(d).

[52] *Kaider v. Hamos*, 2012 IL App. (1st) 111109, 975 N.E.2d 667, 363 Ill. Dec. 641 (2012).

[53] *Id*. at ¶ 14, 975 N.E.2d at 673, 363 Ill. Dec. at 647.

[54] *Id*. at ¶ 17, 975 N.E.2d at 674, 363 Ill. Dec. at 648.

[55] *Id.* at ¶ 23, 975 N.E.2d at 676, 363 Ill. Dec. at 650.

- 14 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

In *Martinez v. Regents of University of Cal.*,[56] the California Supreme Court analyzed whether the California Legislature affirmatively provided for unlawful aliens to be exempt from paying nonresident tuition at California state colleges and universities. There, the California statute "expressly refer[red] to 'the case of a person without lawful immigration status.'"[57] After the court determined that the statute did not violate § 1623, it turned to § 1621. It rejected a lower court's reasoning that to "affirmatively provide[]" required the state law to specify that "illegal aliens" were eligible and to expressly reference § 1621.[58] The court then concluded that "'in order to comply, the state statute must expressly state that it applies to undocumented aliens, rather than conferring a benefit generally without specifying that its beneficiaries may include undocumented aliens.'"[59] Thus, the statute was sufficient to "affirmatively provide[]" for unlawful aliens.

### (ii) Statutory Interpretation

We agree with the analysis of the California and Illinois courts. Both courts rejected the notion that to "affirmatively provide[]" means to include one universal alien status or to expressly reference § 1621. We further agree that in order to "affirmatively provide[]," there must be more than conferring a general benefit that would passively include unlawful aliens.

[10] The plain language of § 1621(d) required the Legislature to "affirmatively provide[] for such eligibility." The federal statute does not require the Legislature to "affirmatively provide[]" for specific services or services that only unlawful aliens can use. It requires the Legislature to state who is eligible. In order to affirmatively provide a state public benefit

---

[56] See *Martinez, supra* note 25.

[57] *Id*. at 1295, 241 P.3d at 866, 117 Cal. Rptr. 3d at 373.

[58] See *id*.

[59] *Id*. at 1296, 241 P.3d at 868, 117 Cal. Rptr. 3d at 374.

to aliens not lawfully present in the United States, as authorized by § 1621(d), the Legislature must make a positive or express statement extending eligibility by reference to immigration status.

### 3. Application to YABI

Having settled the meaning of § 1621(d) and its Nebraska equivalent, we turn first to applicants' two arguments regarding the "affirmatively provides" requirement. Then, we address the meaning of § 43-4505(3)(h).

Applicants argue that for two reasons, YABI "affirmatively provides" for unlawful aliens. Neither is persuasive.

First, they contend that the omission of a lawful presence requirement evidenced the Legislature's intent to include unlawful aliens. They cite our familiar proposition that the intent of the Legislature is expressed by omission as well as by inclusion.[60] And, they argue, the Legislature did not "include any deference to the limitations within PRWORA or L.B. 403 within its eligibility requirements."[61]

[11] But as we have already explained, PRWORA and L.B. 403 apply to YABI. Section 1621(d) dictates that to provide eligibility for a state public benefit to an unlawful alien, the state must "affirmatively provide[]" for such eligibility. Section 1621(a) denies eligibility "[n]otwithstanding any other provision of law," subject to the exception of § 1621(d). Here, the proposition on which applicants rely conflicts with the federal statute. Under the Supremacy Clause of the U.S. Constitution, state law that conflicts with federal law is invalid.[62] The federal statute requires a positive or express statement to include unlawful aliens for eligibility. An omission cannot qualify as a positive or express statement.

---

[60] See *Christine W. v. Trevor W.*, 303 Neb. 245, 928 N.W.2d 398 (2019).

[61] Brief for appellants at 23.

[62] *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 853 N.W.2d 169 (2014).

- 16 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
306 NEBRASKA REPORTS
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

Second, applicants argue that the inclusion of a case management service that assists participants in "[o]btain[ing] the necessary state court findings and then apply[ing] for [SIJ] status . . . or apply[ing] for other immigration relief that the young adult may be eligible for,"[63] evidenced legislative intent to provide for unlawful aliens. They contend that because aliens with and without SIJ status would not qualify as "lawfully present," that it "'expressly' and 'unambiguously' confers a benefit to [unlawful] aliens within the meaning of PRWORA."[64] We disagree.

[12] This provision describes a service, not an eligible recipient. It is not for the courts to supply missing words or sentences to a statute to supply that which is not there.[65] There is no positive or express statement using words which describe individuals. We cannot supply what the Legislature omitted. In *Kaider*, the statute provided for "'noncitizens,'"[66] and in *Martinez*, the statute provided for "'a person without lawful immigration status.'"[67] Nothing like that appears in § 43-4505(3)(h) or anywhere else in YABI.

Moreover, the Legislature has demonstrated that it knows how to affirmatively provide for unlawful aliens to receive public benefits. In § 4-111(3), the Legislature affirmatively provided for a classification of persons, too lengthy to quote here, to grant eligibility for a professional or commercial license. That statute provides an express statement of who is eligible to receive the benefit. And in that instance, the Legislature recited that it enacted subsection (3) "pursuant to the authority provided in [§] 1621(d)."[68] Section 4-111(c) certainly qualified

---

[63] § 43-4505(3)(h).

[64] Reply brief for appellants at 11.

[65] *State v. Jedlicka, ante* p. 52, 938 N.W.2d 854 (2020).

[66] *Kaider, supra* note 52, 2012 IL App. (1st) 111109 at ¶ 23, 975 N.E.2d at 676, 363 Ill. Dec. at 650.

[67] *Martinez, supra* note 25, 50 Cal. 4th at 1296, 241 P.3d at 866, 117 Cal. Rptr. at 373.

[68] See § 4-111(3)(e).

- 17 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

as an affirmative provision. Section 43-4505(3)(h) simply does not do so.

As part of this argument, applicants also contend that if unlawful aliens are not eligible for B2I, then § 43-4505(3)(h) would be "useless and unnecessary."[69] We disagree.

[13,14] Of course, we recognize that some effect must be given to § 43-4505(3)(h). The rules of statutory interpretation require an appellate court to give effect to the entire language of a statute, and to reconcile different provisions of the statutes so they are consistent, harmonious, and sensible.[70] An appellate court gives effect to all parts of a statute and avoids rejecting as superfluous or meaningless any word, clause, or sentence.[71] But we can do so without judicially rewriting the statute to include a blanket eligibility provision that is simply not there.

[15,16] In order to reconcile § 43-4505(3)(h), it must be read in light of relevant state and federal statutes and regulations. Section 1621 required an affirmative provision to make unlawful aliens eligible for YABI, but the Legislature did not. Treating unlawful aliens as eligible for all of YABI would conflict with federal law. But failing to treat § 43-4505(3)(h) as an exception to YABI would also conflict with federal law. The INA defines the term "special immigrant."[72] A federal regulation allows for an alien to be eligible for SIJ status until he or she is 21 years old.[73] Section 43-4514(3) (Cum. Supp. 2014) granted DHHS authority to adopt and promulgate rules and regulations as needed to carry out YABI. For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.[74] Properly adopted and filed

---

[69] Reply brief for appellants at 15.

[70] *Hoppens v. Nebraska Dept. of Motor Vehicles*, 288 Neb. 857, 852 N.W.2d 331 (2014).

[71] *Id.*

[72] See 8 U.S.C. § 1101(27)(J).

[73] See 8 C.F.R. § 204.11 (2020).

[74] *McManus Enters., supra* note 17.

regulations have the effect of statutory law.[75] One of DHHS' regulations strives to carry out the Legislature's intent by assisting an otherwise ineligible young adult in "obtaining the necessary state court findings and then applying for [SIJ] status or applying for other immigration relief that the young adult may be eligible for."[76]

Because the federal regulation provides for SIJ eligibility until the alien is 21 years old, the most sensible reading of § 43-4505(3)(h) creates an exception where DHHS may offer immigration assistance to unlawful aliens until they are 21 years old. That reading was adopted by DHHS and promulgated in its regulations. By carving out this limited exception for unlawful aliens to receive immigration assistance, it most effectively gives effect to every clause of the statute and does so without creating a conflict with federal law.

### 4. CHALLENGE TO REGULATION

Applicants argue that DHHS violated Neb. Const. art. II, § 1, by "improperly adding a B2I eligibility requirement."[77] Specifically, they attack § 003.02, which states that "[i]n order to participate in [B2I], a young adult must be a citizen of the United States or an alien lawfully present in the United States . . . ."

[17,18] We agree that Nebraska's separation of powers clause prohibits the three governmental branches from exercising the duties and prerogatives of another branch.[78] The separation of powers clause prevents a branch from delegating its own duties or prerogatives except as the constitution directs or permits.[79]

But we have already recognized that applicants' interpretation of YABI would conflict with federal law, in violation of

---

[75] *Id.*

[76] 395 Neb. Admin. Code, ch. 10, § 003.02A (2014).

[77] Brief for appellants at 26.

[78] *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011).

[79] *Id.*

- 19 -

Nebraska Supreme Court Advance Sheets
306 Nebraska Reports
E.M. v. NEBRASKA DEPT. OF HEALTH & HUMAN SERVS.
Cite as 306 Neb. 1

the Supremacy Clause of the U.S. Constitution. As we have determined, in order to be eligible for B2I, an individual must be a citizen or "lawfully present." Section 003.02 is simply the codification of the PRWORA limitation of federal law that we have discussed. Under the unique circumstances of the case before us, DHHS did not violate the separation of powers clause when promulgating § 003.02.

## VI. CONCLUSION

We conclude that the district court did not err in determining that applicants were not eligible for B2I. Because applicants were not "lawfully present" and the Legislature did not "affirmatively provide[]" for unlawful aliens to be eligible under YABI, applicants were ineligible for B2I. We affirm the judgment of the district court.

Affirmed.